### JOHN HARRIS V. THE STATE.

#### No. 4636. Decided February 27, 1918.

**Local Option—Insufficiency of the Evidence—Motion for New Trial— Newly Discovered Evidence.**

. Where the affidavits attached to the motion for new trial showed that the main prosecuting witness was at times considered insane, and that he was irresponsible for what he said, etc., a new trial should have been granted, although some of said evidence was cumulative, there being enough in these affidavits to authorize and require the court to grant a new trial.

Appeal from the District Court of Harrison. Tried below before the Hon. P. O. Beard.

Appeal from a conviction of a violation of the local option law; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Y. D. Harrison,* for appellant.—Cited Ford v. State, 53 S. W. Rep., 869; Hill v. State, 53 id., 845; Moore ·v. State, 18 Texas Crim. App., 212.

*E. B. Hendricks,* Assistant Attorney· General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the local option law. · This case presents rather an anomalous record. Tom Harris, father of appellant, was the only witness relied upon by the State to prove the sale, and this he states was to him by his son John. He testified that on the morning of the alleged transaction, which was the 2nd day of February, 1916, as shown by the sheriff's testimony, he was at the residence of his daughter and got a pint of whisky from the defendant and paid for it. That while at the house

he did not drink any whisky, but took the pint and went away. Going by the courthouse, the sheriff found him with the whisky and took it. The sheriff testified that the witness told him that he wanted him to go down to his daughter's house and stop a disturbance that was going on at that place. The witness says he did not make such statement to the sheriff, and that there was no disturbance there at the time. Upon cross-examination this witness testified the son gave him the whisky. Tom Harris and the sheriff both testified that when the sheriff took the whisky from the witness the sheriff gave him a dollar with which to get more whisky from appellant. That Harris took the money and went away. The sheriff and another officer named Bacchus followed. They did not go into the house at the time that Tom Harris did. Bacchus followed Tom Harris from the house and overtook him some distance going away from the house and took another pint of whisky from him. Tom Harris says he bought that also from appellant. The sheriff knew nothing of this transaction further than as above stated, and did not examine to see whether Tom Harris had the money on him, or to see that John Harris had the money; he arrested John Harris at once. There was no money found left in the house.

Appellant, his sister, and a witness named Jackson all testified that they were present at the house where the first transaction occurred, and that John Harris was not present when the witness Tom Harris got the second pint. Their testimony, in substance, was this: that appellant and his sister were in the habit of ordering whisky for their own use, and on this occasion his father had been to the house. At that time they had no whisky. After he left appellant and Jackson went to the depot and received from the express office five bottles, half of which belonged to appellant and the other half to his sister. They took these bottles to his sister's residence, and there they divided this whisky by putting some of it into pint bottles; that it belonged equally to appellant and his sister. After they reached home with the whisky their father, Tom Harris, returned, took two or three drinks, and when he left they gave him a pint of whisky, which he took with him. This was the whisky that the sheriff found on the person of Tom Harris near the courthouse. These witnesses testified that there was no sale made to the witness Tom Harris, and that appellant gave him the pint when he left the house. With reference to the second pint, the witness Tom Harris returned to the house, went into the room where the whisky was, took a pint and went away, but left no money and paid nothing for it; that appellant was not present and did not know he got it until later. There is some evidence to show that Tom Harris felt very unfriendly to his son and daughter. He made such admission. There is evidence also that Tom Harris was at times considered crazy, and had been since he received a lick on the head working in the Texas & Pacific Railroad shops, and that he was irresponsible for what he said. There is appended to the motion for new trial affidavits of various parties to the

effect that Tom Harris was crazy at times, and his daughter makes an affidavit also as to the conduct of her father towards her; that he had insisted continuously upon his having illicit relations with her, which she declined, and this brought about his persecution of her. She says the reason she did not let this be known prior to the trial was that she wanted to avoid publicity of such things, and indicates the reason she does it now was on account of the unjust conviction of her brother. This bore upon the feeling and antipathy of her father towards her and her brother, the defendant. In this connection it will also be noticed that the sheriff testifies that he got the whisky from Tom Harris on the 2nd day of February, 1916. There was nothing done about the matter except to arrest the defendant at the time. On the 18th day of March, 1917, more than a year subsequent to this transaction, the indictment in this case was returned. Because of the contradictory statements of the witness Tom Harris in which he states that at one time he bought the whisky, and the next time that appellant gave him the whisky, and his general condition as a witness, his mental status, and the environments of this case as already stated and the newly discovered evidence, we are of opinion that this conviction ought not to stand. All the testimony shows, except that of Tom Harris, that there was no whisky sold; that it was a gift by the son to his father in one instance, and a taking of the whisky without the knowledge of appellant in the other instance. Tom Harris is not corroborated as to the sale by any testimony, not even the sheriff. The sheriff knew nothing about it except what Tom Harris told him, which was as stated by the sheriff, that he, Tom Harris, got the whisky from his son, appellant. He knew nothing of the second transaction except that he gave Tom Harris a dollar and told him to get some more whisky. Whether he bought it or not he could not say. There was no explanation given why, after the sheriff arrested appellant on the 2nd of February, 1916, a prosecution did not follow, and that it was deferred for more than a year. We are not willing to sanction this verdict under the circumstances. While some of the evidence set out in the motion for a new trial may be said to be in its nature cumulative, yet it goes stronger to the point that Tom Harris was not responsible for his acts; that he was at times, and especially when he had a little whisky in him, crazy. Some of this testimony was cumulative perhaps, but yet there was enough in these affidavits to authorize and we think require the court to grant a new trial.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, absent.